GREEN, HARDING & Co. *v.* J. M. RELF & Co.—Same *v.* R. B. SYKES— Same *v.* CADY & HOLMES.

An obligation signed by the members of a stock company to pay a certain amount proportionate to the stock of each, is not a joint, but a several obligation.

Where a majority of the stockholders have, by the charter, the right to order the winding up and liquidation of the affairs of the company, and a majority of them sign an obligation to pay their proportion of the outstanding debts, they cannot be released from the obligation on the ground that it was not binding upon any of the stockholders until all had signed.

APPEAL from the Sixth District Court of New Orleans, *Howell*, J. *Race & Foster*, for plaintiffs. *Durant & Hornor* and *Ogden & Stansbury*, for defendants and appellants.

COLE, J. In 1852, a stock company or limited copartnership was formed, under the name and style of the " New Orleans and Florida Steamship Company," under the Act of the Legislature of the State of Louisiana, approved 13th March, 1837. B. & C. Digest, p. 613.

The object of the company is expressed in Art. 1st of their charter : " That the operations of said company shall be, to run a steamship or ships from the port of New Orleans to and from the coast of Florida, or any other part or places on the Gulf of Mexico, for the purpose of carrying freight and passengers."

The steamship " James L. Day " was purchased, and the company went into operation, with plaintiffs, *Green, Harding & Co*, as agents, to manage and carry on the affairs of the company.

The enterprise not proving successful, the members of the company, embracing the defendants and all the stockholders then forming the company but one, availed themselves of Art. 10th of the charter to wind up and liquidate the affairs of the company.   Art. 10th is as follows :

" That at the expiration of the term for which the said company is formed, or sooner, if the majority of the stockholders shall so decide, the President and Board of Control shall proceed to wind up and liquidate the affairs of the said company in such manner as shall be decided by said stockholders."

Under this Article, document B was signed by all the stockholders but one. It reads as follows :

" The undersigned stockholders in the New Orleans and Florida Steamship Company, believing it for the interest of all concerned, that the affairs of said company should be wound up and liquidated, agreeably to the Article 10th of the act of copartnership, recommend that the steamer James L. Day, after due notice, be sold at auction on such terms as the President and Board of Control shall decide. The proceeds of the sale of the boat and all other property and assets to be applied to the payment of the debts of the company ; and in case they should prove insufficient for that purpose, and the claim of the company against the United States Government for carrying the mails cannot be immediately collected, then, in that case, the agents are hereby authorized to pay the outstanding debts of the company, and call upon the stockholders for their proportion of the same."

Acting upon this authorization, the agents proceeded to liquidate and settle up the affairs of the company.

The steamship James L. Day was sold at auction upon the terms agreed ; the other properties and assets of the company were disposed of, when there was found a deficit of $19,546 79 against the company.

The claim against the United States being rejected by the Government, plaintiffs called upon the various members of the company for their several proportions of the deficit.   Several of them paid the amount of their obligations, in proportion to the amount of stock possessed by them.   The defendants having refused to pay, these suits have been instituted to compel them to pay their proportion according to the stock owned by them.

There was judgment for plaintiffs, and defendants have appealed.

Our attention is called by appellants to their exception to these suits, on the ground that the obligations of defendants are based upon a joint contract, and that all charged as obligors should be made defendants in one action.

The District Court properly overruled this exception.  The defendants, in signing document B, obligated themselves to pay respectively a certain amount proportionate to the stock of each.   This was not a joint, but a several obligation. C. C. Arts. 2073, 2075, 2079.   Each of the stockholders promised separately for himself to do a distinct act, which was to contribute according to the amount of his stock, to pay the plaintiffs the amount they may have disbursed for the outstanding debts of the company.

There is also a bill of exceptions taken to the admission of document B.   It is objected that it was not signed by *all* the stockholders of said company, and that it was not binding upon any until all had signed.

By Art. 10th of the charter, a majority of the stockholders have the right to

GREEN
v.
RELF.

order the winding up and liquidation of the affairs of the company. It is unnecessary for us to decide whether all the formalities required by law for a dissolution of the company have been followed; it is sufficient in the present case to say that the defendants have voluntarily entered into a contract by which they assumed certain obligations, and they do not appear to have been induced to assume them either by error or fraud.

According to the 10th Article alluded to in document B, a majority of the stockholders had the right to wind up and liquidate the affairs of the company; a majority of the stockholders signed document B; therefore, defendants cannot justly complain that every one did not sign it, and thus free themselves from obligations assumed on the strength of their signatures to document B.

Upon the merits, the judgment appears to be correct.

Judgment affirmed, with costs of appeal.